161620 Max Sound Corporation v. Google Everyone settled? All right. Mr. Boothor, whenever you're ready. May it please the court, the district court's order dismissing Max Sound's case for lack of standing should be reversed for several reasons. One is that the court ignored the substantial evidence showing that VSL, the signatory to the license agreement, was the agent or alter ego of Vedanti, the patent owner. In addition, even Vedanti and VSL in the German litigation involving the German patent department took the position that Vedanti gave VSL an exclusive license. And then those exclusive rights were transferred by VSL to Max Sound, which is another way by which Vedanti effectively transferred to Max Sound the exclusive rights that Max Sound was asserting in that lawsuit. But that's not what you're arguing happened here, or is it? Well, bottom line, I believe that VSL was a sham and it was used as a conduit for Vedanti to transfer to Max Sound. Well, I mean, that's not an issue before us. I mean, if that's predicate that you need for us to conclude before in order to find against you, how are we supposed to make those determinations here? Well, what Max Sound submitted in the district court was enormous evidence that VSL was either the agent or alter ego of Vedanti. If it is either the agent or alter ego of Vedanti, that makes Vedanti... And the district court rejected that? It didn't even consider that evidence, I submit, Your Honor. On the agency issue, we submitted enormous evidence. VSL was formed just nine days before the contract was entered into. Nash, the head of both Vedanti and VSL, had signed prior agreements switching the contracting entity over and over and over again. The entire negotiation of the license agreement occurred before VSL even existed. So who was Nash negotiating on behalf of? She had to be negotiating on behalf of Vedanti. But then you tried to amend your complaint to put in VSL and not Vedanti. Well, that was only in response to the court's footnote where the court said that we should have added VSL as well if VSL actually had rights to the patent. Our point was that VSL was a former exclusive licensee. The rights granted by Vedanti to VSL, according to its confirmatory license agreements, were then transferred entirely to Max Sound. So VSL no longer had any rights because VSL's purpose in this whole transaction was simply a conduit. There was no intent for VSL to hold any rights for any period of time. It was simply a vessel and either is the agent of Vedanti, if we want to honor the corporate distinctions between the entities, or it was the alter ego of Vedanti. Either way, Vedanti is bound by the agreement entered into in the name of VSL. But, I mean, VSL had no assets. It had no business purpose other than to be this conduit. And even Nash admitted at one point that VSL stands for all assets in Vedanti. Let me ask you, you're relying in part on the alter ego doctrine. And one of the prongs of that doctrine is that there has to be an inequitable result. Yes. Now, certainly in a lawsuit between Max Sound and VSL and Vedanti, I could see Max Sound arguing there's an inequitable result here. I was ill-used, if you will, by Ms. Nash. And maybe I'm wrong on this, but how does that impact Google? I mean, Google's kind of an innocent bystander when all of this is going on. Doesn't normally this inequitable result situation apply when you have the party who dealt with the party saying, I was treated unfairly and it'd be an inequitable result to discharge me? Why should Google be stuck with what Ms. Nash did to Max Sound? They're not stuck. In a way, they are kind of a bystander in this. Well, they are stuck with the patents. But if Max Sound legitimately has the rights that the agreement gave to it, the judge said, well, Vedanti's not technically a party to the agreement. That is a superficial distinction because to say VSL was the party when VSL is merely an alter ego of Vedanti is to overlook the fact that if Max Sound was really dealing with Vedanti, which the overwhelming evidence shows that it was, and VSL was merely the sham conduit, Max Sound got those rights that it paid half a million in cash and 10 million in securities for. And so, therefore, this isn't about inequity to Google. Google deserves to be sued by the party with the rights to enforce the patent. Max Sound is that party because it acquired those rights from Vedanti through VSL, either because VSL was the agent of Vedanti. Why in all these transactions was there's no mention of the 339 patent? There's this broad reference to, I guess the term is ODT technology. But the cases seem to be pretty clear that somehow there has to be a reference to the patent that's at issue. It doesn't have to necessarily be in writing, but there's got to be some, doesn't there have to be some specification of the patent? I don't believe so. If you describe a genus, that includes the species. So if I say I'm assigning to you all of my wireless patents, the issue becomes what does that include? That's a contract issue to interpret it. Then you have to go through and decide, okay, is this a wireless patent? Is that a wireless patent? You have to try and ascertain the intent of the parties, which is done in every contract dispute. And here, there is no dispute. And Vedanti confirmed and VSL confirmed that Max Sound was given the rights to the 277 patent. No one questions that. The 277 patent isn't mentioned by number in the Max Sound license agreement. So there is no authority that says you have to actually cite the patent number. In fact, in the Speedpay case, the number was wrong. But wasn't there a specific assignment of the 277 patent? Well, there was, but don't forget it said inter alia. The language was clear that the affidavit in Germany focused on the German litigation. Why was there no, when there was references to this other patent, why was there never a reference anywhere to the 339 patent? But in the Max Sound license agreement, there was no reference to any specific patent. They were described in generic terms, and it didn't mention the 277 European patent either. But there is no dispute that Vedanti gave Max Sound those rights through VSL. And so there is no requirement that you have to list each patent. It would have been nice to do that. Obviously, you wouldn't be arguing about this if that was done. But we don't punish parties because their contract drafter didn't get it perfectly right. When there is an issue as to what does that include, we try to ascertain the intent of the parties. And the language in the Max Sound agreement was very broad, worldwide rights. And the negotiations of the parties, Nash kept emphasizing the 339 patent and the desire to enforce that in the United States. So in terms of ascertaining the intent of the parties, we believe that the only reasonable interpretation of the broad worldwide rights listed in the Max Sound agreement is that it includes one of the ODT patents that's labeled optimized data transmission, which is the 339 patent. There is no other reasonable interpretation. And Google doesn't give any effort to define what worldwide rights meant. What did the ODT technology reference in the agreement, what did that mean? It meant intellectual property invented by Krzyzewski and Nash entitled optimized data transmission system and method. That's the very name of the 339 patent. So the intent has to be ascertained. The intent clearly was to include the 339 patent as well as the 277 patent as part of the worldwide rights that were being transferred from Vedanti through VSL to Max Sound. But, you know, the agreement talks about, I think the agreement itself shows that VSL was being used as an intermediary. It says that VSL legally owns and controls all of the worldwide rights, title, and interest to all fields of use of its trade secrets patents, plural, and all other know-how through its affiliated entities and owners. So the agreement itself says that VSL controlled these, not as the owner, but through its affiliates, and Vedanti was one of its affiliates. So the agreement itself. Vedanti was a subsidiary. It was at one time. It was moved around by Nash several times, but it's clearly an affiliate. Which one is the parent? Which one is the subsidiary? According to Nash, the parent is VSL. It was created, again, 11 days or 9 days before the agreement was entered, but she made Vedanti at that time a subsidiary of VSL. Later she transferred Vedanti to another company called Semicom. These were all shells for her. I guess hypothetically, you're saying VSL owned all these rights through Vedanti or due to Vedanti, but what if VSL was just lying? Because there's never actually an agreement between VSL and Vedanti. Well, there is actually. If you look at the Newell affidavit submitted in Germany, he says, except for the license that has been granted to VSL, he's signing this on behalf of Vedanti, except for the license that has been granted to VSL, I'm skipping a few words here, and the sub-license granted to MaxSound Corporation, no other license has been granted by Vedanti. So Newell admits right there that Vedanti is the real party granting the rights to VSL and then to MaxSound. Is there an actual, I don't know, written agreement between Vedanti and VSL? Yes. The MaxSound license is an agreement with Vedanti because VSL… Well, it's an agreement with VSL. Well, but VSL acting as the agent or alter ego of Vedanti makes Vedanti a party. Right, but you're assuming the conclusion there. That's what we're trying to get to. Well, but the law… I mean, let's take this step by step. Sure. I mean, the agreements between VSL and MaxSound, right? Well, there's two ways to look at it. Just say yes, and then you can go on and talk about your alter ego and agency theory. Yes, the signatory is VSL. Connie Nash, who is both the president and CEO of VSL and Vedanti, signed the agreement as the president of VSL. And Vedanti isn't mentioned in the agreement. Other than when it says that VSL has these rights through its affiliated entities, which of course is Vedanti. But the name Vedanti doesn't show up in there. Okay. But once again, Nash admitted that VSL stands for all the assets of Vedanti. So when you see VSL anywhere, either as an agency matter or as an alter ego matter, that's Vedanti. And then you can see in the German litigation where Vedanti admits… But that's based simply on what Ms. Nash says, right? Well, but that's an admission, and that's certainly, you know, that evidence is uncontradicted. There's nobody saying under oath or in admissible form, I didn't mean that. I mean, that is undisputed evidence that Vedanti was using VSL as an intermediary. So there's no question about that. Google didn't submit any real evidence in opposition. Their whole argument was you have to have this chain of title and there has to be an agreement actually naming Vedanti, you know, V-E-D-A-N-T-I. And because the agreement with Max Sound was signed by Nash as a VSL president, end of story. But that ignored the alter ego and the agency evidence that showed that VSL was simply this front conduit, whatever you want to call it. And the cases that we cited in the law is that that shows that Vedanti was the real party. They were bound by VSL when VSL signed the agreement in the name of VSL. To do otherwise would result in this inequity. After shilling out 500,000 in cash and 10 million in shares of stock, Max Sound is left with nothing. Nobody is disputing. I mean, I have no idea. And the normal thing, if you have a cause of action, the cause of action would be with the party that misled you into having you pay money for something you didn't receive. So it's not that you're left without nothing. The question here we're talking about is who is the proper party, who is charged? But we weren't misled because we knew we were dealing with the patent owner Vedanti and its front VSL. Or at one time it was four other entities. So we weren't misled. We're not claiming fraud against Vedanti. We're saying that Vedanti intended to, and the documentary evidence shows, transfer the rights to sue Google to Max Sound. Do you think there was fraud anywhere here? Well, certainly after the fact when MASH tried to steal the lawsuit for her own benefit and basically disavow what she had represented and promised to Max Sound. But Max Sound doesn't have to be relegated to a suit against VSL, which by the way has been dissolved. It no longer exists. Or Vedanti, which now no longer owns the patents. We want the rights to the patents. We paid for them. Vedanti gave them to us through VSL. And so all we want to do is confirm what the evidence shows we were given by Vedanti and be able to assert those rights that we paid for. Did you try early on to get Vedanti to amend the complaint to get Vedanti in? Well, originally Vedanti was. They were a defendant. Well, in the Delaware action, Vedanti was a voluntary plaintiff with us. Then Ms. Nash went rogue and she became uncontrollable and somewhat destructive. And that's what led to this current situation. Let's assume for the moment that we affirm. Then who owns the patent right now? Right now, VLL Vedanti Licensing Limited owns the patents. Except for, yeah, all of the ODT patents, yes. And that's based on a subsequent? Post appeal. Post appeal. Yes, yes. But then if we were to affirm here, then you have an agreement with VLL, not VSL, but VLL? And Vedanti actually. And Vedanti that you would now be the co-owner? Only upon the termination of this litigation. But that shouldn't. We lose the priority, if you will, that we have of our October 14 filing. And that would impair Mack's sounds rights. So we are a party now who can't reinstitute this lawsuit. The dismissal is effectively with prejudice because it says we don't have standing. And so we shouldn't be forced to drop this proceeding because we can eventually get back to where we want to be. And plus, the attorney sees motion would be. You can't really get back to where you want to be because you wouldn't at the time. Exactly, exactly. I'm way over my limit. Yes. We'll restore three minutes of your time. Thank you very much, Your Honor. Good morning. Ms. Schomburg. I recognize it's a little awkward to start my argument with a question for the panel. But Judge Chen referred to our motion to dismiss for mootness towards the end of counsel for Mack's sounds argument. Would you like for me to address our motion to dismiss for mootness first? Or would you like for me to just discuss the merits? Why don't you go out to the merits? I mean, I think maybe a couple of us have a few questions on that. But why don't you proceed with the merits first? Thank you for the question, Your Honor. So counsel for Mack's sound focused on the agency and alter ego theory that they've advanced among their many theories for why they have standing in this case. So I will focus on that as well. I think the first and perhaps most telling point is that counsel for Mack's sound has not identified and we have not identified a single case in which agency or alter ego has actually led to a patent license. But let me ask you about the language in the license itself, which it says in the second paragraph, I'm sure you're very familiar with it, it says through its affiliated entities and owners. Is there any doubt, was there any dispute over whether or not Vedanti is an affiliated entity with VSL? So I certainly believe that Vedanti is an affiliated VSL insofar as it's a subsidiary company. I'm sorry, there are a number of entities here. That said, the way that the district court interpreted that whereas clause and the way that we've always interpreted that whereas clause is that it does not expand the rights that VSL is granting. It simply confirms that VSL owns the rights that it is granting. And that actually responds to another point that was raised during counsel for Mack's presentation, which is that this agreement, again, it's not really Google's issue, but the agreement's not illusory. It does also talk about conferring VSL's rights to different claims, and it talks about conferring VSL's rights to source code and software and things like that. So we read that whereas clause as confirming that VSL is conferring the rights that it owns, but not expanding the parties to the agreement nor expanding the rights that are being conveyed. So what I was saying is that there is no case where a patent license has resulted from an agency or alter ego theory. And as I was looking through cases relating to implied licenses, I found a quote from this court that I think explains why. In the Spine Solutions case, this court said, if we were to find standing based upon these facts, and those facts involved two closely related entities essentially swearing to the court, insisting to the court that the second of them had rights as an implied license, licensee of the patent. If we were to find standing on these facts, this would mean that any company related to a patent owner could be treated as an exclusive licensee, so long as that patent owner allows the company to practice the patent, regardless of any agreement as to actual exclusivity. And I think that's a similar danger that we run into here. What we have in the written record is an agreement between VSL and MacSound that doesn't even mention the patent owner, and it doesn't convey the patent owner's rights to the 339 patent. But the agency and alter ego theories fail for a host of reasons in addition to that. The district court did consider all of the facts that were submitted by MacSound. And I'll submit today that MacSound hasn't identified a single fact, much less a meaningful one that would have made a difference to the result, that the district court failed to consider. The district court considered details about the negotiation history. It considered the back and forth between Nash and Halpern, who negotiated on behalf of MacSound. And it considered all of these different agreements that were entered into, the VSL agreement as well as these confirmatory license agreements, which relate to the 277 European patent and the territory of Germany very specifically. The affidavit that counsel for MacSound mentioned also relates directly to the territory of Germany and the European 277 patent, not the 339 patent. In fact, the fact that there are licenses in the record that are similar to those confirmatory license agreements that actually do relate to the 339 patent, that were never signed, indicates again that the VSL agreement was not intended to confer rights to the 339 patent. But the district court considered all of these theories. And with regard to agency, as the panel likely knows, the test is that there has to be a manifestation by the principal that the agent will act for him. And that manifestation has to be accepted. It has to be an agreement between the parties that the principal is going to allow the agent to control the transaction. And no such evidence was presented here. The district court explicitly stated that it considered the negotiation history and the organizations of Vedante and VSL. And it concluded that MacSound felt short of showing that VSL was specifically authorized to transfer any of Vedante's rights when it executed the agreement. And that authorization is the central tenet of finding agency. The district court rejected that based upon all of the facts that it reviewed and found. With regard to alter ego, the district court also has some very specific findings, both the fact and conclusions of law. It said that piercing the corporate veil is an extreme remedy. And it found that there is no reason to apply that remedy under these circumstances. It said that courts have set forth many factors regarding alter ego. But here, the evidence presented by MacSound didn't go to a lot of those factors. The district court did consider the organization of the two companies, Vedante and VSL. And it said, nor is there sufficient evidence to find that Nash abused the corporate privilege such that it should be disregarded in her dealings with Halpern. So that finding and those findings of fact go directly to the question of alter ego. What we have here is an agreement entered into between MacSound and VSL that cannot confer the rights to Vedante's patent. Why don't we move on then to the motion? Why don't we talk a little about the motion? It seems to me your friend has a pretty strong argument that there's a different case here. There are things here to be won or lost in this case that aren't necessarily mooted out by the subsequent agreement. And therefore, we should just move forward as we always intended to move forward, deciding this appeal and moving on. Well, let me respond to that. We obviously are satisfied to have the appeal decided on the merits should the court believe that it is not moved. But we do think there is a serious concern regarding mootness. Let me explain why. First of all, I want to start with a specific fact that was relied upon by counsel for MacSound because I think it is telling as to the record on mootness generally. MacSound says that they want to preserve their damages period by preserving this original complaint to go six years back from their October 14th filing date for the original complaint. But they cannot do that as a matter of math or as a matter of law because the 399 patent issued in July of 2011. So their original filing date for the complaint, October of 2014, only goes back to July of 2011. And if they were to refile now, they would go back to July of 2011. So there's no legal interest of MacSound's to be impacted by whether they proceed under the original complaint or whether they refile their complaint. And I'd submit that what's happened here is that appellees have been in the middle of a dispute. What about the other thing they argue was the attorney's fees motion pending before the district? Right. Actually, they argued two other things, the attorney's fees motions, and they say they might be subject to an additional IPR. Let me address those two things in turn. So with regard to the attorney's fees motion, in this court's Nasatka v. Delta Psy Corporation decision, the court found that the issue of a pending attorney's fees motion, even on the same merits issue, is irrelevant to the determination of whether the issue is on appeal or moot. And the reason for that, I can go into detail from that case, it's actually very well on point, is that MacSound could appeal the attorney's fees motion if it doesn't like the results on that motion. But it's not before the court right now. What's before the court right now is whether or not that MacSound had standing to sue when it filed its original complaint. Nasatka makes claim that... Yeah, but if we were to reverse that, that would eradicate the dispute over attorney's fees below. So they do have something to be gained if we have a reversal that automatically does away with the ability to seek attorney's fees for that first case and the first instance. So that's actually very similar to the situation in Nasatka where the court explained that, in effect, Nasatka is seeking our blessing on an issue that no longer has any impact. And there, Nasatka also wanted the appeal decided because it would be informative of a pending fees motion. And the court found that that was inappropriate, that that would be an advisory opinion that's prohibited, and that Nasatka could receive exactly the same relief if it were to refile its complaint as it could if the court were to reverse the decision finding. Well, let me take you to another point, which isn't your friend arguing that whatever this agreement is, it's not effectuated until after this appeal is decided? So he is arguing that, but the issue is that he's entered into a settlement agreement with VLL that causes MacSound to become a co-owner of the 339 patent regardless of the outcome in this appeal. So it is a springing event that they've creatively drafted into their settlement agreement in order to try and avoid mootness, but that event will spring no matter what happens. But it hasn't sprung yet, right? It has not sprung yet, but I think the best way to understand our mootness argument is to look at the three things that could happen here. This court could affirm the lower court decision, in which case MacSound and the new patent owner VLL are going to file a new lawsuit against Google. This court could reverse the lower court decision, in which case MacSound is going to file a new complaint in the existing lawsuit against Google, eliminating Vedanti, the old patent owner, and adding VLL, the new patent owner. The third option is that this court dismisses the appeal, in which case MacSound and the new patent owner are going to sue Google. So under any scenario, MacSound files a new infringement lawsuit with the new patent owner, and the damages issue that it's raised is not correct. The fees motion should not be considered with regard to whether or not this appeal is moot. And the IPR is something that is related to an issue that came up in this court's system divisions case. In that case, there was a collateral proceeding that could have been informed by a decision in an appeal on moot issues. And this court explained that the fact that an appellate order would be beneficially impactful in a tangentially related legal proceeding does not change the fact that the appeal is moot. So whether or not MacSound is subject to another IPR, and MacSound doesn't tell the court that there are actually already two IPRs ready for argument in February and decision in May, existing in this case, but whether or not MacSound is subject to a third IPR is a completely hypothetical tangentially related proceeding. And those are the three things that MacSound has identified as what this appeal can actually impact. And none of them properly put this appeal before the court based on subject matter jurisdiction. I'm happy to answer any further questions on this or on the merits. Just so I understand, I mean, MacSound is not arguing that it was a co-owner of the 339 patent before it entered into this agreement with VLL, right? Correct. And that co-ownership of the 339 patent with VLL doesn't spring into reality if and until we affirm the dismissal here. So there's no if, it's just until. So if you were to reverse the district court order, it would spring into reality because VLL and VLL would join as a co-plaintiff in the current case. Right, but MacSound wouldn't be a co-owner. They wouldn't become a co-owner. They become a co-owner no matter what. And if you were to affirm the district court decision, they will become a co-owner. I have the quote where MacSound explains it in its brief. Where is that? I apologize. MacSound puts it like this. Either way, MacSound will be able to pursue a claim against Google for infringement of the 339 patent, thereby eliminating all issues withstanding in the long run. And it will be doing so as a co-owner of the patent, regardless of the outcome in this appeal. Is that what it says right now? That's what it says in the agreement. The agreements were actually filed under seal, so I hesitate to read to you from the agreements. But I don't think there's any dispute that that's what it says in the agreements. Thank you. Thank you. Thank you, Your Honors. A couple points, one by one here. Can we start with Mootness? Mootness, sure. You're right, this is a different case than the one that might be filed sometime in the future once MacSound acquires co-ownership status. And I didn't hear any reason why the IPR issue isn't a genuine issue there. And as to the damages period... Well, you did hear something. I think your friend said that there are cases or whatever that suggest that we can't be affected in terms of our decision on Mootness or standing by some tangential proceeding that's not part of this proceeding. I haven't read all of those cases, but that's what she said. But MacSound's interests, our legal interests, are clearly affected by whether you dismiss for Mootness or not. If you dismiss for Mootness and a new lawsuit had to be refiled with V&L and MacSound as co-owners, I didn't hear Google's counsel say that they couldn't file a new IPR within the one-year period after that new lawsuit gets filed, whereas if you reverse and we go back down, that one-year period has come and gone clearly. So that would directly and adversely affect MacSound if you dismissed this appeal. And furthermore, on the damages period, yes, the patent issued on July 11, 2011, but who knows when V&L will agree to file a new lawsuit? Who knows where they will file a new lawsuit? They don't necessarily have to file in the Northern District of California. They could file in a venue where there's proper venue,  that lawsuit might be dismissed and then there would be a loss of damages clearly. So we don't know when that new lawsuit will be filed, where, and what might happen to it, and if this appeal is dismissed or moot. But they have pretty much control over it to ensure that they will get the same amount of damages they would in the new case as they would have under the old because the clock starts running in 2011. Right, but if the new lawsuit... Yeah, they might decide we don't care and we won't file it until 2020, but that's not... But if they have the ability to get the accrual of six years worth of past damages, that ought to be enough. But it's not clear that they will because even if they filed on July 11, okay, of 2017 and going back to six years, because we believe there's infringement immediately from the issuance of the patent. If that lawsuit were dismissed for some reason, and again, one can only tell, and it had to be refiled in a different venue or for whatever reason, the damages start to get lost. The point is that Max Sound's rights to sue Google at this point do not exist unless you affirm, or reverse rather, or affirm until you decide we cannot, unlike the case that Google relied on, refile right now. We are barred from doing that by collateral estoppel. And then furthermore, on the attorney's fees... I don't understand. Well, what I'm saying... Hypothetically, if we affirm this appeal tomorrow... Yes. ...then you become a co-owner. Yes, that's true, that's true. But what I'm saying is, unlike the case that Google relied on, we cannot just, as that plaintiff could have done, refile. We are barred from refiling as an exclusive licensee, and that's all we are right now is an exclusive licensee. So the issue of mootness is a strict standard. I mean, we have to have no legally protected interest available to us, and we do. The attorney's fees issue is clear. On the case that Google relies on there, the district court dismissed, for lack of jurisdiction, claims that involved the government under the 1498, I think, is the statute. Therefore, the federal circuit in that case said, we're not going to get into the prevailing party issue because the only issue that was appealed was the Rule 11 sanction dismissing that case. And yes, that was undone by the district court, but the judgment about the lack of jurisdiction on the claim involving the government, that was there. That wasn't going to go away, and so therefore, the defending could still be the prevailing party. So the federal circuit there said, let's wait and see what happens. Here, if you reverse, game over, as you said, Your Honor. So this decision is going to be more than informative. It will be dispositive of that issue. One final thought, because you exceeded your time. Oh, I'm sorry. Okay. We thank both parties and the cases submitted. That concludes our proceedings for this morning. All rise. Your Honor, the court has adjourned until tomorrow morning at 10 a.m.